UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROBERT TELMANOSKI and DONNA BRANDZ,** | Hon. Joseph H. Rodriguez |
| *Plaintiffs*, | 1:20-cv-05466 |
| v. | OPINION |
| **BONEFISH GRILL, LLC t/a BONEFISH GRILL, DS SANCHEZ CLEANING SERVICES, and JOHN DOES 1–10** | |
| *Defendants*. | |
| AND | |
| **BONEFISH GRILL, LLC, t/a BONEFISH GRILL,** | |
| *Third-Party Plaintiff,* | |
| v. | |
| **DS SANCHEZ CLEANING SERVICES,** | |
| *Third-Party Defendant.* | |

This matter is before the Court on the motion for summary judgment filed by Defendant Bonefish Grill, LLC t/a Bonefish Grill ("Bonefish"). [Dkt. 37]. For the reasons set forth below, the Court will deny Bonefish's motion.

## I. Factual and Procedural History

The facts of this case are largely undisputed. Plaintiff Robert Telmanoski ("Telmanoski") worked for a food delivery service that delivers foods to Bonefish Grill

1

restaurants. [Def. SUMF ¶ 5].[1] On April 12, 2018 around 8:30 a.m., Telmanoski delivered food to the Bonefish Grill located at 3121-F Fire Road in Egg Harbor Township, New Jersey. [Dkt. 37 at 11]. No Bonefish employees were present at the time and Telmanoski used a drop-box key to gain access to the restaurant. [Def. SUMF ¶¶ 11–12]. Telmanoski claims that while he was inside the restaurant he slipped on a piece of paper on the ground and suffered injuries. [Def. SUMF ¶¶ 15–17].

Telmanoski and his wife, Donna Brandz (collectively, "Plaintiffs"), filed a complaint in the New Jersey Superior Court, Atlantic County alleging premises liability and loss of consortium. [Dkt. 1]. Bonefish removed the case to this Court based on diversity jurisdiction. [Dkt. 1]. Bonefish filed a third-party complaint against third-party defendant DS Sanchez Cleaning Service ("DS"), a company that performed cleaning services for Bonefish's Egg Harbor location. [Dkt. 11]. Plaintiffs then filed an amended complaint to add claims against DS. [Dkt. 13]. After discovery, Bonefish filed the present motion for summary judgment against Plaintiffs. [Dkt. 37].

## II. Standard of Review

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *accord* Fed. R. Civ. P. 56(c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

---

[1] "SUMF" refers to the statement of undisputed material facts submitted in connection with Bonefish's motion and Plaintiffs' opposition thereto under Local Rule 56.1(a).

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *Id.* In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.*; *Maidenbaum v. Bally's Park Place, Inc.*, 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256–57.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

### III.    Analysis

Plaintiffs' premises liability and loss of consortium claims are, at bottom, negligence claims. *See V.C. by Costello v. Target Corp.*, 454 F. Supp. 3d 415, 423 (D.N.J. 2020); *Butler v.*

*Acme Markets, Inc.*, 445 A.2d 1141, 1143 (N.J. 1982).[2] "In a negligence action, a plaintiff bears the burden of proving four elements: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Scott v. Mercer Cty. Improvement Auth.*, No. A-3392-17T2, 2019 WL 1552748, at *2 (N.J. Super. Ct. App. Div. Apr. 10, 2019) (citing *D'Alessandro v. Hartzel*, 29 A.3d 1112, 1114 (N.J. Super. Ct. App. Div. 2011) (citation omitted)). "The traditional common law approach to landowner or occupier tort liability toward a person who has been injured because of a dangerous condition on private property is predicated on the status of the person on the property at the time of the injury." *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1113 (N.J. 1993). "Historically, the duty of the owner or occupier to such a person is gauged by the right of that person to be on the land. That status is determined by which of three classifications applies to the entrant, namely, that of a business invitee, licensee, or trespasser." *Id.* (citation omitted).

In this case, the parties agree that Telmanoski was a business invitee.[3] A landowner owes a duty "to protect business invitees from foreseeable harm." *Morris v. Krauszer's Food Stores, Inc.*, 693 A.2d 510, 512 (N.J. Super. Ct. App. Div. 1997). This general duty of care "includes an affirmative duty to inspect the premises and requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." *Troupe v. Burlington Coat Factory Warehouse Corp.*, 129 A.3d 1111, 1113–14 (N.J. Super. Ct. App. Div. 2016). Thus, a landowner "owes a duty of reasonable care to a business invitee against any dangerous conditions on its property that were known or should have been discovered." *Scott*, 2019 WL 1552748, at *2

---

[2] There is no dispute that New Jersey law applies to the present motion.

[3] A business invitee is an individual that has "been invited on the premises for purposes of the owner that often are commercial or business related." *Hopkins*, 625 A.2d at 1113.

(citation omitted). "The characteristics of the dangerous condition giving rise to the slip and fall … may support an inference of constructive notice about the dangerous condition." *Troupe*, 129 A.3d at 1114. Whether a landowner has breached its duty of care to a business invitee is a jury question. *Morris*, 693 A.2d at 513 (citing *Butler*, 445 A.2d at 1141).

In its summary judgment motion, Bonefish does not dispute in that paper being on the floor may create a "dangerous condition" for business invitees or that slipping is a foreseeable consequence of having paper on the floor. Bonefish also does not deny that paper was on the restaurant floor that could have caused Telmanoski to slip. Rather, Bonefish argues that it is entitled to summary judgment because Plaintiffs cannot show that Bonefish and its employees knew or should have known of the paper that caused Telmanoski to slip and fall. [Dkt. 37 at 14–15].

The Court disagrees. Plaintiffs have offered Telmanoski's deposition testimony stating that he slipped on paper covering the Bonefish restaurant's floor while making a delivery. [Telmanoski Dep. 20:22–25]. Plaintiffs have also offered deposition testimony of Jonathan Naylor ("Naylor"), the former manager of the Bonefish restaurant at issue. Naylor testified that paper was "commonly" placed on the floor between the restaurant's kitchen and dining room to keep the floor clean of "footprint tracks" while the restaurant was being cleaned. [Naylor Dep. 35:15–36:15]. Naylor also testified that he knew that outside vendors delivered supplies to the restaurant before the store opened and before Bonefish employees arrived for work in the morning. [Naylor Dep. 23:10–24:9]. Indeed, Naylor testified that Bonefish created a key drop to allow non-employees to deliver goods to the restaurant without employees present. [Naylor Dep. 25:8–25:25; 26:24–27:11].

5

Taken together and construed in favor of Plaintiffs, this testimony permits the inference that Bonefish knew or should have known that paper was on the restaurant floor on April 12, 2018, and that a "reasonable inspection" of the premises would have made Bonefish aware of the paper hazard and provided Bonefish the opportunity to "eliminate the dangerous condition." *Troupe*, 129 A.3d at 1113–14. This testimony also suggests that it was foreseeable that a business invitee such as Telmanoski would enter the restaurant alone and be subject to injury from this dangerous condition. *Morris*, 693 A.2d at 512.

Bonefish argues that this evidence cannot support a finding of actual or constructive knowledge because it does not show who put the paper on the restaurant floor or when it was placed on the floor. [Dkt. 37 at 14–16]. To support this argument, Bonefish relies on *Troupe v. Burlington Coat Factory*, where a state appellate court upheld summary judgment in favor of defendants in a slip-and-fall case. 129 A.3d at 1116. There, the plaintiff slipped and fell on a stray berry left on the floor of the defendant's retail store. *Id.* at 1114. The court of appeals found that the defendant did not know and had no reason to know that a single berry was on the floor.[4] Bonefish argues that the same reasoning applies here because Plaintiffs have not offered evidence that Bonefish knew who put the paper on the restaurant floor or when it was placed on the floor. [Dkt. 37 at 14–16].

The Court disagrees because the "characteristics" of the hazard in *Troupe* are distinguishable from those of the paper hazard here. Unlike the single errant berry in *Troupe*, Naylor's testimony provides evidence that Bonefish's employees and/or third-party cleaners

---

[4] "There was no proof Burlington or any employee had actual knowledge about the berry on the floor. There were no eyewitnesses and nothing about the characteristics of the berry that would indicate how long it had been there. There were no other berries in the vicinity. No one was found to have been eating berries in the area." *Troupe*, 129 A.3d at 1114.

6

regularly placed paper on the floor during cleaning and that Naylor and others at Bonefish knew of this practice. [Naylor Dep. 35:15–36:15]. Moreover, deposition testimony suggests that the paper would have been readily visible upon a cursory inspection. Naylor testified that that the paper used to protect the restaurant floor stretched between the restaurant's kitchen and dining room [Naylor Dep. 38:4–12],[5] and Telmanoski testified that the paper was approximately three feet long and five feet wide. [Telmanoski Dep. 24:20–25:5]. This evidence suggests that reasonable inspection of the restaurant would have led Bonefish to identify and remove the paper from the ground before Telmanoski or any other business invitees entered the restaurant. *See Hopkins*, 625 A.2d at 1117 (noting that property owners have a non-delegable duty toward business invitees to "make reasonable inspections of the property and to remedy any reasonably discoverable defects.").

Because the Court finds that Plaintiffs have provided sufficient evidence that Bonefish should have known of the hazardous condition at issue here, the Court need not consider Bonefish's alternative argument for summary judgment based on lack of evidence that Bonefish created the hazard.

## IV.   Conclusion

For the reasons stated above, the Court will deny Bonefish's motion for summary judgment. An appropriate order will follow.

December 21, 2021                                        /s/ Joseph H. Rodriguez

                                                                        Joseph H. Rodriguez, USDJ

---

[5] Naylor also testified that the same kind of "table paper" was used every time. [Naylor Dep. 38:10–12].